UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

    Two's Company Restaurant & Lounge, LLC,    Case No. 21-12177

    Debtor-In-Possession.    Chapter 11, subchapter V

Address: 213 Main Street, Mosinee, WI 54455

Employer Tax-Identification (EIN) No(s).: 48-1297885

## FIRST AMENDED PLAN OF REORGANIZATION, DATED APRIL 29, 2022

**Background for Cases Filed Under Subchapter V**

**A.    Description and History of the Debtor's Business**

Two's Company Restaurant & Lounge, LLC ("the Debtor") is a limited liability corporation operating as a fine dining restaurant. It also provides catering and delivery services. Craig Ziemanski, the owner, has owned and operated the restaurant since 2002.

Mr. Ziemanski acquired the business from his parents. He conducted the business as they did, which did not comply with optimal business record-keeping or following customary business plans. There were financial problems through much of its existence. These problems were exacerbated due to the COVID-19 pandemic, as the Debtor's business was halted for over three months. The loss of revenue during this period was financially debilitating. Because of the shutdowns, significant defaults occurred due to the lack of cash flow. The Debtor's business is getting back to normal but has never been to the point where it can make up for the previous months of loss revenue.

The Debtor continues to install financial safeguards in its record-keeping. Nonetheless, it is still having trouble reporting operational income and expenses in a format acceptable to the office of the United States Trustee. Just recently, a new accountant has agreed to represent the Debtor, and continuing improvement to the decades-old management style is anticipated.

This case was filed as an emergency petition, where pre-bankruptcy planning was not possible. The prepetition conduct of the Debtor's affairs had included taking rents from the upstairs apartment as a personal draw for Mr. Ziemanski and the use of company funds to pay Mr. Ziemanski's personal credit cards. These actions were discovered through investigation by the Office of the United States Trustee, and actions were taken by management to cease these improprieties.

The goal of the reorganization is to reduce the amount of the secured claim and re-amortize it so as to generate cash flow for the payment of priority and unsecured claims. This will have the impact of curing prepetition defaults and proceed with a more streamlined business model.

### B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a chapter 7 liquidation. The liquidation analysis required by 11 U.S.C. §1190 is attached to the Plan as Exhibit 1.

### C. Ability to Make Future Plan Payments and Operate Without Further Reorganization

Under Subchapter V of Chapter 11 of the United States Bankruptcy Code, a plan may be either consensual, in which case the statutory governance is under 11 U.S.C. §1191(a), or nonconsensual, in which case the statutory governance is under 11 U.S.C. §1191(b). According

to guidance from the Office of the United States Trustee, the difference between the two types of plan confirmation are:

Consensual Plans

Section 1191(a) provides that the court may confirm a plan only if all requirements of section 1129(a) other than 1129(a)(15) are met. This is "consensual" confirmation. Effectively, this requires that all impaired classes accept the plan.

In a consensual plan, the debtor generally makes payments under the plan directly. Except as otherwise provided in the plan or confirmation order, the confirmation of a consensual plan discharges the debtor under section 1141(d), and section 1141(d)(5) does not apply in subchapter V cases to delay the discharge for individual debtors. 11 U.S.C. § 1181(a).

The trustee's services are terminated upon the substantial consummation of a consensual plan. 11 U.S.C. § 1183(c)(1).

Non-consensual Plans

A plan that is not confirmed consensually under section 1191(a) can still be confirmed "non-consensually" under section 1191(b).

Generally, section 1129(b) does not apply in a subchapter V case. Instead, section 1191(b) permits the court, on request of the debtor, to confirm a plan that does not meet the requirements of subsections 1129(a)(8), (10), or (15). Subsection (a)(8) requires that all impaired classes accept the plan. Subsection (a)(10) requires, as a prerequisite to cram down under 11 U.S.C. § 1129(b), that at least one impaired class of claims has accepted the plan. And subsection (a)(15) requires that if an unsecured creditor objected to the plan in a case filed by an individual debtor, the debtor pays the greater of the amount of the claim or the debtor's projected disposable income for five years.

To confirm a subchapter V plan non-consensually under section 1191(b), the court must find that the plan does not discriminate unfairly and that the plan is fair and equitable with respect to each class of impaired claims or interests that has not accepted the plan. While the standards for the unfair discrimination prong are the same as under section 1129(b)(1) applicable to other chapter 11 cases, what is "fair and equitable" with respect to unsecured creditors is different and the absolute priority rule of subsection 1129(b)(2) does not apply.

See *Small Business Reorganization Act Manual*, §§ 3-17.9.1 and 3-17.9.2, pp. 12-13, retrieved at https://www.justice.gov/ust/file/sbra_legal_manual.pdf/download.

Thus your vote on the plan will help determine whether confirmation of the Plan is consensual or non-consensual.

Either way, the Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business, and the Plan

must provide projections that support the Debtor's ability to make all payments required by the Plan. See 11 U.S.C. §1190.

The Plan Proponent has provided projected financial information as Exhibit 2. While the financial projections are labelled by calendar year, the Plan uses the figures as projections for the 12 month periods following confirmation.

The Plan Proponent's financial projections show that the Debtor will have projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the period described in § 1191(c)(2) of $4,229.50 per month for the first year after confirmation, $4752.08 per month in the second year after confirmation, and $5,310.08 in the third and final year under the Plan. Plan payments to priority and unsecured claims extend beyond three years.

The final Plan payment is expected to be paid 12 years after the date of confirmation.

***You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.***

### ARTICLE 1: SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of the Debtor from cash flow from operations. If the confirmation is consensual, then the Debtor shall make all of the payments provided below. If the confirmation is non-consensual, then for the term of the Plan, the Debtor shall make a lump sum payment to the Subchapter V Trustee, and the Subchapter V Trustee shall make the payments provided below and receive compensation for the services as allowed by 11 U.S.C. §1194(a)(3).

This Plan provides for:

| [ 2 ] | class of priority claims; |
|---|---|

| [ 1 ] | classes of secured claims; |
|---|---|
| [ 1 ] | class of non-priority unsecured claims; and |
| [ 1 ] | class of equity security holders. |

**Payment of non-priority unsecured claims.** As of the date hereof, filed unsecured claims, claims that filed as secured and have had their liens avoided, and the undersecured portion of claims filed as secured are in the amount of $205,754.66. Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 12.12 cents on the dollar, or an estimated total of $24,947.33. Attached hereto as Exhibit 3 is a calculation sheet that shows the claims and their treatment. Exhibit 4 is Debtor's *estimation* of the plan payments. These payments are subject to adjustment based on the allowance of claims, including the allowance of administrative expenses like attorneys' fees for the Debtor and Subchapter V Trustee, and whether the plan is confirmed consensually or non-consensually.

**Payment of administrative expenses and priority claims:** This Plan provides for full payment of administrative expenses and priority claims. These are in the estimated amount of $25,000.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

*Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)*

**ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS**

**2.01: Class 1.** All allowed claims entitled to priority under § 507(a) of the Code (except administrative expenses under § 507(a)(2) and priority tax claims under § 507(a)(8)).

**2.02: Class 2.** The claim of Tom Riordan to the extent allowed as a secured claim under § 506 of the Code.

**2.03: Class 3.** The claim of the United States of America, Internal Revenue Service, to the extent allowed as a secured claim under § 506 of the Code.

**2.04: Class 4.** The claim of the Wisconsin Department of Revenue to the extent allowed as a secured claim under § 506 of the Code.

**2.05: Class 5.** The claim of Rapid Financial Services to the extent allowed as a secured claim under § 506 of the Code.

**2.06: Class 6.** The claim of Sound Garden to the extent allowed as a secured claim under § 506 of the Code.

**2.07: Class 7.** The claim of Green Capital to the extent allowed as a secured claim under § 506 of the Code.

**2.09: Class 9.** All non-priority unsecured claims allowed under § 502 of the Code.

**2.10: Class 10.** Equity interests of the Debtor.

**ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES**

**3.01: Unclassified claims.** Under section § 1123(a)(1), allowed administrative expenses, and priority tax claims are not in classes.

**3.02: Administrative expenses.** Administrative expenses allowed under § 503 of the Code, will be paid in deferred payments from the excess cash flow of the Debtor after provision

for tax and secured claims, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

**3.03: Priority tax claims.** Each holder of an allowed priority tax claim will be paid without interest over a five-year period in equal monthly installments.

**3.04: Statutory fees.** All unpaid fees required to be paid under 28 U.S.C. § 1930 that are owed on or before the effective date of this Plan will be paid on or before the effective date.

**3.05: Prospective quarterly fees.** All quarterly fees required to be paid under 28 U.S.C. § 1930(a)(6) or (a)(7) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code.

**ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

**4.01: Claims and interests are treated as follows under this Plan:**

| Class | Impairment | Treatment |
| --- | --- | --- |
| Class 1 – **Priority claims** excluding those in Article 3 | ☐ Impaired<br>☒ Unimpaired | There are no Class One priority claims that are not excluded in Article 3. |
| Class 2 – **Secured claim** of Tom Riordan | ☒ Impaired<br>☐ Unimpaired | The allowed secured claim of Tom Riordan shall be paid, together with interest at the rate of 5% per annum, at the rate of $1860.51 per month over a 12 year amortization. |

| | | |
|---|---|---|
| Class 3 – **Secured claim** of IRS | ☒ Impaired<br>☐ Unimpaired | The IRS filed a secured claim in the amount of $22,371.21. Its lien shall be avoided pursuant to 11 U.S.C. sec. 506(d) inasmuch as the claim of Tom Riordan is first in priority and exceeds the value of all assets of the debtor. This claim shall instead be treated as a priority claim under §3.03 above. |
| Class 4 – **Secured claim** of Wisconsin Department of Revenue | ☒ Impaired<br>☐ Unimpaired | The Wisconsin Department of Revenue had on file tax warrants, creating a secured claim in the amount of $104,728.07. Its claim filing deadline has not yet expired. Its lien shall be avoided pursuant to 11 U.S.C. sec. 506(d) inasmuch as the claim of Tom Riordan is first in priority and exceeds the value of all assets of the debtor. This claim shall instead be treated as a priority claim under §3.03 above. |
| Class 5 – **Secured claim** of Rapid Financial Services | ☒ Impaired<br>☐ Unimpaired | Rapid Financial Services filed a proof of claim in the amount of $20,036.60. Its lien shall be avoided pursuant to 11 U.S.C. sec. 506(d) inasmuch as the claim of Tom Riordan is first in priority and exceeds the value of all assets of the debtor. This claim shall instead be treated as an unsecured claim under Class 9 below. |
| Class 6 – **Secured claim** of Sound Garden | ☒ Impaired<br>☐ Unimpaired | On the date of the commencement of this case, Sound Garden had on file a UCC financing statement indicating that it held a secured claim. It has not filed a proof of claim in this matter. Its lien shall be avoided pursuant to 11 U.S.C. sec. 506(d) inasmuch as the claim of Tom Riordan is first in priority and exceeds the value of all assets of the debtor. Its claim shall not be allowed. |

| | | |
|---|---|---|
| Class 7 – **Secured claim** of Green Capital | ☒ Impaired<br><br>☐ Unimpaired | On the date of the commencement of this case, Green Capital had on file a UCC financing statement indicating that it held a secured claim. It has not filed a proof of claim in this matter. Its lien shall be avoided pursuant to 11 U.S.C. sec. 506(d) inasmuch as the claim of Tom Riordan is first in priority and exceeds the value of all assets of the debtor. Its claim shall not be allowed. |
| Class 9 – **Non-priority unsecured creditors** | ☒ Impaired<br><br>☐ Unimpaired | All unsecured claims, including the undersecured portion of any secured claim, shall be paid from the excess projected disposable income available after monthly payment to all secured and priority claims and after payment in full of all administrative claims |
| Class 10 – **Equity security holders of the Debtor** | ☒ Impaired<br><br>☐ Unimpaired | No payment shall be made on account of equity ownership for five years following confirmation of this Plan. Notwithstanding the foregoing, to the extent that an owner of equity works for the Debtor, that owner shall be entitled to draws commensurate with wages payable to similarly situated employees in Central Wisconsin. |

**ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS**

**5.01: Disputed claim.** A *disputed claim* is a claim that has not been allowed or disallowed and as to which either:

    (i) A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

    (ii) No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02: Delay of distribution on a disputed claim.** No distribution will be made on account of a disputed claim unless and until it is allowed.

**5.03: Settlement of disputed claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

**5.04: Allowed Claims.** No payment shall be made on any claim that is not an Allowed Claim as that term is used in the Bankruptcy Code. No unfiled claim is an Allowed Claim. Late-filed claims would require the holder of such claim to obtain an order from the Bankruptcy Court that the claim should be allowed.

### ARTICLE 6: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

(a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date of the Plan:

HarborTouch, credit and debit card processor. Lease term: 8/14/2020 to 8/14/2023.

Reinhart Food Service, LLC, lease for kitchen dishwasher. Lease term: 09/2021 to 09/2022.

(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, either before the effective date or under section 6(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.

(c) There are tenants in the apartments above the restaurant building. Inasmuch as these tenants are effectively present as holdover tenants on a month-to-month basis, no provision is made for either acceptance or rejection of the contracts.

A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date on which the court enters the order confirming this Plan.

**ARTICLE 7: MEANS FOR IMPLEMENTATION OF THE PLAN**

Upon consensual confirmation, the Debtor shall commence monthly payments directly to the creditors in the amount required for amortization of priority and secured claims in the amounts set forth above. Further, the excess projected disposable income set forth above after payment of priority and secured monthly payments shall be paid monthly to administrative expense claims until such time as the administrative expenses are paid in full. Thereafter, the excess projected disposable income after payment of priority and secured monthly payments shall be paid pro rata to Allowed Unsecured Claims on a quarterly basis.

Upon non-consensual confirmation, the Debtor shall make monthly payments to the Subchapter V Trustee, William Wallo, or such successor trustee as shall be appointed by the Court, for distribution in accordance with the terms of the Plan. The Trustee shall commence monthly payments to the creditors in the amount required for amortization of priority and secured claims in the amounts set forth above. Further, the excess projected disposable income set forth above after payment of priority and secured monthly payments shall be paid monthly to administrative expense claims until such time as the administrative expenses are paid in full. Thereafter, the excess projected disposable income after payment of priority and secured monthly payments shall be paid pro rata to Allowed Unsecured Claims on a quarterly basis.

The Trustee may retain the fee as provided under 11 U.S.C. sec. 1194(a)(3) in conducting this service.

In the event of default in the payments under a consensual plan, the creditor shall have a direct right of action against the Debtor for collection of the amounts provided for under the Plan. In the event of default in payments under a non-consensual plan, the creditor shall bring a motion before the Bankruptcy Court setting forth the relief it seeks for such default during the three-year period of the Plan. The Debtor reserves all rights to seek modification of the Plan under 11 U.S.C. sec. 1193.

**ARTICLE 8: GENERAL PROVISIONS**

**8.01: Definitions and rules of construction.** The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

**8.02: Effective date.** The effective date of this Plan is the day that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the day after the date on which the stay expires or is otherwise terminated. These periods are calculated as provided in Federal Rule of Bankruptcy Procedure 9006(a)(1).

**8.03: Binding effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

**8.04: Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**8.05: Corporate governance.** 11 U.S.C. § 1123(a)(6) of the Code is not applicable to this Debtor.

**8.06: Retention of Jurisdiction.** The court confirming the Plan may exercise jurisdiction to the full extent necessary to administer this case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

**ARTICLE 9: DISCHARGE**

If the Debtor's Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

 (i) imposed by this Plan; or

 (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

 (i) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192;

 or

 (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

**ARTICLE 10: OTHER PROVISIONS**

None.

                                                  GOYKE & TILLISCH, LLP

                                                  George B. Goyke
                                                  Attorney for the Debtor
                                                  Wis. Bar No. 1001340

GOYKE & TILLISCH, LLP
2100 Stewart Avenue, Suite 140
Wausau, WI 54401
(715) 849-8100
goyke@grandlawyers.com